IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Kathleen Marie Waddell, ) | |
| ) | Civil Action No. 6:11-90-JFA-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on May 7, 2007, alleging that she became unable to work on June 10, 2005. The application was denied initially and on reconsideration by the Social Security Administration. On October 1, 2007, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and vocational expert Robert F. Brabham, Jr., appeared on May 7, 2009, considered the case *de novo*, and on August 12, 2009, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on November 29, 2010. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since June 10, 2005, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).
>
> 3. The claimant had the following severe impairments: degenerative disc disease of the lumbar spine, status and post laminectomy/diskectomy, Graves Disease, and osteoarthritis (20 C.F.R. § 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, I find that claimant had the residual functional capacity to perform work as defined in 20 C.F.R. § 404.1567(a) except no lifting and/or carrying over 10 pounds occasionally and less than 10 pounds frequently; no standing and/or walking over 2 hours in an 8-hour workday; only occasional stooping, balancing, crouching, kneeling and climbing of stairs and ramps; and no crawling or climbing of ladders, ropes or scaffolds.
>
> 6. The claimant is capable of performing past relevant work as an accounts payable clerk, accounts receivable clerk, and office manager. This work does not require the performance of work-

> related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from June 10, 2005 through the date of this decision (20 C.F.R. § 404.1520(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff previously worked at clerical jobs (accounts payable, accounts receivable, and office manager) and as a parts inspector (Tr. 33-38). She quit work in June 2005 because she alleged her pain became too severe (Tr. 126, 148, 160).

In 2001, doctors at the Charleston Hand Group diagnosed the plaintiff with carpal tunnel syndrome in her right wrist and performed a carpal tunnel release in November 2001 (Tr. 200, *see also* Tr. 196-208). In April 2002, doctors opined that she had reached maximum medical improvement and released her to work full time but to not lift more than 10 pounds with her right hand. Also, in mid 2002, a nerve conduction study and physical examination of the plaintiff's left wrist were "unremarkable," but doctors nonetheless limited her to lifting no more than 10 pounds with either hand and to avoid repetitive motion (Tr. 204, 206).

In November 2003, Bill Edwards Jr., M.D., performed surgery on the plaintiff's herniated discs (discectomy), after MRIs showed degenerative changes and some disc herniation in her lumbar spine (Tr. 209, 210-11, 255-58). While the plaintiff reported minimal improvement following the procedure, Dr. Edwards noted that an MRI showed some postoperative changes in her back but no evidence of recurrent herniation and ordered her to continue physical therapy and gradually increase her activities (Tr. 216, *see also* Tr. 212-13, 250).

Throughout the first half of 2004, the plaintiff reported continued back pain without improvement from physical therapy, but Dr. Edwards noted that her pain seemed

out of proportion to what the MRI showed (Tr. 217). In October 2004, Dr. Edwards noted that the plaintiff was not taking any pain medications despite her continued reports of pain and that she was physically able to do "pretty much everything she want[ed] to do." He recommended pain medications. In February 2005, Dr. Edwards opined that the plaintiff's back had reached maximum medical improvement and that she had a 20% permanent back impairment (Tr. 218, 219).

In June 2005, the plaintiff presented to Donald R. Johnson II, M.D., and complained of low back pain. Eight days later, Dr. Johnson opined that the plaintiff could not work until further notice due to herniated discs in her back and her degenerative disc disorder (Tr. 221-23, 235). In late June 2005, a discogram (enhanced x-ray examination of the intervertebral discs) showed "some mild abnormality" caused by degenerative bone spurs. Dr. Johnson recommended a disc replacement (Tr. 227-30, 234).

In July 2005, the plaintiff presented to Harry S. Allen III, M.D., for a check of her thyroid hormone levels, and Dr. Allen noted that aside from the plaintiff's back problems, she was "doing well." The plaintiff next presented to Dr. Allen nine months later in April 2006, when she presented for another check of her thyroid hormone levels (Tr. 277, 278).

Three months later, in July 2006, the plaintiff presented to Dr. Edwards again for her back pain. Dr. Edwards noted that the plaintiff's insurance company had denied coverage for the disc replacement that Dr. Johnson had recommended and that the plaintiff was seeking another referral for the surgery. Dr. Edwards also noted that there was no evidence of recurrent herniation, no signs of sciatic stretch, no motor weakness, and that most of her pain was mechanical (Tr. 269). Dr. Edwards referred the plaintiff to William B. Naso, M.D., to whom the plaintiff presented in September 2006 and complained of back pain "all the time." Dr. Naso examined the plaintiff and found that her legs and arms had normal bulk and tone, full (5/5) strength including grip in both hands, good range of motion

throughout, and that she experienced back pain (but no leg pain) with the extension of either leg. Dr. Naso diagnosed the plaintiff with degenerative disc disease, chronic low back pain, and chronic lumbar radiculopathy, but recommended against a disc replacement because he opined that her pain was unlikely to improve following surgery (Tr. 272-74). Instead he recommended aggressive outpatient physical therapy (Tr. 284).

The next month, the plaintiff presented to Dr. Allen complaining of left shoulder pain following a fall. An MRI showed no bone bruises or tendon tears, but some mild degenerative changes. Dr. Allen recommended heat, range of motion exercises, and medication. Throughout 2007 and 2008, the plaintiff presented to Dr. Allen six times for follow up; at each visit, he checked her thyroid hormone levels and adjusted and refilled her thyroid medications (Tr. 281, 282, 283, 284-85, 291, 298-300).

In June 2007, state agency physician William Linder, M.D., reviewed the plaintiff's medical records and opined that her Graves disease and disc disease were non-severe impairments (Tr. 286-87). In September 2007, state agency physician Beth Chasman, M.D., also reviewed the plaintiff's medical records and found that her pain and conditions were non-severe. Dr. Chasman noted that Dr. Johnson's June 2005 opinion that the plaintiff was unable to work was not supported by objective medical evidence and that the Charleston Hand Group's opinion that the plaintiff could not lift more than 10 pounds was nearly five years old and that recent examinations did not show any limits on the plaintiff's use of her arms (Tr. 295-96).

In March 2009, Dr. Allen completed a check-the-box form entitled "Medical Evaluation - Social Security." Dr. Allen noted that he was not a specialist, but opined that the plaintiff had a spine disorder that resulted in nerve root compression meeting the criteria of Listing 1.04A due to her disc herniation and right arm and leg pain (Tr. 301-03). He then opined that, while the clinical findings did not match all of the findings required for a finding of nerve root compression, the plaintiff's neck and arm pain was complicated by headaches

and "fibromyalgia-like symptoms." Dr. Allen stated that the plaintiff did not suffer from bilateral carpal tunnel syndrome, but opined that she had reduced grip strength. He also stated that the plaintiff's thyroid-related symptoms included Graves disease, chronic fatigue, and general malaise (Tr. 301-02). Dr. Allen opined that the plaintiff could sit more than two hours at a time for a total of four hours in an eight-hour work day; stand and/or walk one hour at a time for less than two hours in an eight-hour work day; frequently lift less than 10 pounds, occasionally lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds; that she could reach overhead with her right arm only 10% of the time; and that she could occasionally twist, stoop, and climb stairs, rarely crouch or squat, and never climb ladders (Tr. 302).

At the May 2009 administrative hearing, the plaintiff testified that, when she worked as an office manager just before her alleged onset date, she needed to take frequent breaks, to get up and walk around at will, and to go out to her car to lay down (six or seven times a day for 20 to 30 minutes at a time) – all of which her employer accommodated (Tr. 36-37).

The plaintiff testified that she had constant pain in her low back that also caused leg cramps and numbness in her feet (Tr. 39, 44). She said she had carpal tunnel syndrome in both hands that caused pain, swelling, and weakness in her hands, and that the carpal tunnel release performed on her right wrist in 2001 did not help. She testified that her Graves disease caused memory loss, daily headaches, dizziness, and affected her immune system. She said her medications caused dizziness and lightheadedness (Tr. 40-42, 43). She testified that she could type for about 15 minutes at a time, sit for about 10 or 15 minutes at a time, stand for about 15 or 20 minutes at a time, walk for 30 minutes at a time, and could not bend. The plaintiff estimated that she could lift a gallon of milk at most (Tr. 42, 46, 48-49). She drove a few times per week to doctor appointments, the grocery store, and Wal-Mart. She prepared light meals, did the laundry, and did "light

dishes," but her husband did most of the cleaning (Tr. 30-33). She also took care of two dogs (Tr. 55).

The vocational expert testified that the plaintiff's past work as an accounts payable clerk, an accounts receivable clerk, and as an office manager were all sedentary work, and that her past work as a parts inspector was medium work (Tr. 57-58). The vocational expert testified that a hypothetical individual of the plaintiff's age, education, and past work experience who could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk two hours in an eight-hour work day; occasionally stoop, balance, crouch, kneel, and climb stairs or ramps but could not crawl or climb ladders, ropes, or scaffolds could perform the plaintiff's past clerical work, but could not perform her past work as a parts inspector (Tr. 58-59). The vocational expert also testified that if the hypothetical individual needed to lie down three times per day at unexpected intervals or could not use her hands for repetitive or occasional keyboard use, the hypothetical individual would not be able to perform any of the plaintiff's past relevant work (Tr. 59-60).

The plaintiff submitted a statement from a former co-worker to the Appeals Council (Tr. 112, *see* Tr. 1-4). The former co-worker stated that, following the plaintiff's back surgery, she needed to lie down in her car during the day to relieve her back pain and that there were days she was unable to drive to work (Tr. 112).

## ANALYSIS

The plaintiff was 46 years old on her alleged onset date of June 10, 2005. She has a general equivalency diploma. The ALJ found that the plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work and further found that she could perform her past relevant work as an accounts payable clerk, an accounts receivable clerk, and as an office manager. The plaintiff argues that the ALJ erred by (1) failing to properly evaluate the opinion of her treating physician, Dr. Allen, and failing to find

that she met Listing 1.04 (Disorders of the Spine); (2) failing to consider her impairments in combination; (3) failing to include limitations on the use of her upper extremities in the RFC assessment and improperly assessing her credibility; and (4) determining that she could perform her past relevant work.

***Treating Physician and Listing 1.04***

The plaintiff first argues that the ALJ failed to properly consider the opinion of her treating physician, Dr. Allen. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the

10

> opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

As set forth above, in March 2009, Dr. Allen completed a form entitled "Medical Evaluation - Social Security." Dr. Allen noted that he was not a specialist, but opined that the plaintiff had a spine disorder that resulted in nerve root compression meeting the criteria of Listing 1.04A due to her disc herniation and right arm and leg pain (Tr. 301-03). He then opined that, while the clinical findings did not match all of the findings required for a finding of nerve root compression, the plaintiff's neck and arm pain was complicated by headaches and "fibromyalgia-like symptoms." Dr. Allen stated that the plaintiff did not suffer from bilateral carpal tunnel syndrome, but opined that she had reduced grip strength. He also stated that the plaintiff's thyroid-related symptoms included Graves disease, chronic fatigue, and general malaise (Tr. 301-02). Dr. Allen opined that the plaintiff could sit more than two hours at a time for a total of four hours in an eight-hour work day; stand and/or walk one hour at a time for less than two hours in an eight-hour work day; frequently lift less than 10 pounds, occasionally lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds; that she could reach overhead with her right arm only 10% of the time; and that she could occasionally twist, stoop, and climb stairs, rarely crouch or squat, and never climb ladders (Tr. 302).

The ALJ specifically considered Dr. Allen's opinion and found the plaintiff's impairments did not meet or medically equal Listing 1.04 (Tr. 14-15). The ALJ first noted that Dr. Allen's opinion that the plaintiff met Listing 1.04A was not entitled to controlling weight as this was a determination reserved solely to the Commissioner (Tr. 14-15).

Second, the ALJ found that Dr. Allen's opinion was outside of his area of expertise (Tr. 15). Dr. Allen himself recognized this, noting on the form that he was not a back specialist (Tr. 301). As pointed out by the Commissioner, Dr. Allen's treatment notes repeatedly state that the plaintiff's back pain was being treated by other doctors (*see* Tr. 266 (referring the plaintiff to specialist for treatment of her back condition), 259-60 (same), 277 (noting that back problems were being addressed by orthopedic surgeons), 278 (noting that Dr. Edwards was seeing the plaintiff for her back problems)).

The ALJ also noted that the plaintiff saw Dr. Allen infrequently, about once every three to four months on average (Tr. 15). As pointed out by the Commissioner, Dr. Allen's treatment notes dated after the plaintiff's alleged onset date show that he saw her infrequently (often at six month intervals), and that the extent of his treatment was monitoring her thyroid hormone levels and prescribing her hormone and other types of medication (*see* Tr. 277 (July 2005 treatment note indicating follow up, recheck of hormone levels, and medication refills), 278 (April 2006, same), 279 (July 2006, same), 280 (September 2006, same), 284 (January 2007, same), 285 (May 2007, same), 291 (August 2007, same), 298 (February 2008, same), 299 (June 2008, same), *but see* Tr. 281 and 283 (October 2006 notes indicating complaints of shoulder pain)).

The ALJ found that Dr. Allen's opinion "depart[ed] substantially from the rest of the evidence in the record" (Tr. 15). As the ALJ noted, the plaintiff was treated by Dr. Edwards from 2003 to 2005 (prior to her alleged onset date) (Tr. 12, *see* Tr. 214-19). Dr. Edwards performed back surgery on the plaintiff and, following the surgery, noted that despite some pain – for which the plaintiff was not taking any pain medications – the plaintiff was able to do everything that she wanted to do, and Dr. Edwards merely recommended that she start taking pain medications (Tr. 12, *see* Tr. 218). The ALJ noted that a June 2005 MRI (around the time of her alleged onset date) showed mild to moderate degenerative changes in the plaintiff's back, moderate stenosis, and some possible nerve

root contact (Tr. 12-13, *see* Tr. 234), which did not support a finding that she met Listing 1.04A. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (requiring evidence of compromise of her nerve root or spinal cord with evidence of nerve root compression). The ALJ also noted that Dr. Naso examined the plaintiff in September 2006 and found that her arms and legs had normal bulk and tone, full (5/5) strength, and good range of motion, and that extension of her legs led to back pain but no leg pain (Tr. 13, *see* Tr. 272-74), which also did not support a finding that the plaintiff met Listing 1.04A. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (requiring evidence of positive straight-leg raising test (both pain in the back and distribution down the legs along the nerve) and motor loss (atrophy with associated muscle weakness or muscle weakness)).

Lastly, the ALJ discounted the opinion noting that it appeared to be based upon the plaintiff's subjective complaints (Tr. 15). As noted by the Commissioner, Dr. Allen's own treatment notes following the plaintiff's alleged onset date do not show that he ever examined her with regard to her back pain. Further, Dr. Allen's notes do not show that he ever placed restrictions on the plaintiff's physical activities (Tr. 277-85, 291-93, 298-300).

All of the foregoing considerations by the ALJ were appropriate in considering the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(d). The ALJ considered all of the evidence and reasonably found that the plaintiff's back condition did not meet the criteria of Listing 1.04. Accordingly, this claim of error is without merit.

### *Combination of Impairments*

The plaintiff next argues that the ALJ failed to consider whether the combined effects of her impairments were medically equal to any of the listings. This court disagrees. As argued by the Commissioner, the ALJ acknowledged, several times, that the standard for disability under the Act required him to consider the plaintiff's "combination" of impairments (Tr. 9, 10) and then explicitly found that the plaintiff did "not have an impairment or combination of impairments" that met or medically equaled a listing at step

13

three (Tr. 15). The ALJ also stated, repeatedly, that his decision was based on consideration of the entire record (Tr. 9, 11, 15, 16, 17). The ALJ discussed the medical evidence for nearly five pages in connection with his step two finding that the plaintiff had severe impairments (including osteoarthritis and her Graves disease), discussed all of her severe impairments at step three, and went on to discuss the plaintiff's RFC for over two pages of his decision. The ALJ's detailed discussion demonstrates that he accounted for the plaintiff's combination of impairments to the extent they were supported by the record evidence (Tr. 11-17). The ALJ's limitations to sedentary work with additional lifting, standing, walking, and postural restrictions shows that he accounted for the symptoms imposed by the combination of the plaintiff's physical impairments (Tr. 15-17).

Based upon the foregoing, this allegation of error is without merit.

*RFC Assessment and Credibility*

The plaintiff next argues that the ALJ erred because he did not include any limitations on the use of her arms in the RFC assessment and he improperly assessed her credibility. The ALJ limited the plaintiff to sedentary work with the additional restrictions that she occasionally lift 10 pounds and frequently lift less than 10 pounds; stand and/or walk two hours in an eight-hour day; occasionally stoop, balance, crouch, kneel, and climb stairs and ramps, and that she never crawl or climb ladders, ropes, or scaffolds (Tr. 15-16).

The plaintiff argues that the ALJ improperly "ignored" Dr. Allen's opinion that she had significant limitations in her reaching, handling, and fingering and that she could not use her right arm for reaching more than 10% of the day (Tr. 302). As discussed above, the ALJ reasonably discounted Dr. Allen's opinion as a whole. With regard Dr. Allen's opinion on the plaintiff's use of her arms, the ALJ noted that Dr. Allen specifically stated that the plaintiff did not suffer from bilateral carpal tunnel syndrome (Tr. 17, *see* Tr. 301-02). Despite that statement, Dr. Allen opined the plaintiff had reduced grip strength due to her Graves disease, chronic fatigue, and general malaise (Tr. 17, *see* Tr. 301-02). However,

14

as the ALJ noted, Dr. Allen's treatment notes showed that the plaintiff's Graves disease was stable with medication throughout the course of his treatment, and his treatment notes never indicated that the plaintiff had reduced grip strength (Tr. 13).

The rest of the medical evidence did not support a finding of greater arm restrictions than the ALJ assessed in his RFC finding. The ALJ recognized that the plaintiff had been diagnosed with carpal tunnel syndrome in her right wrist in 2001 and underwent a carpal tunnel release (Tr. 11-12; *see* Tr. 204). Although doctors found no evidence of carpal tunnel syndrome on her left side, they nonetheless limited her to lifting no more than 10 pounds with her either hand, apparently based on her subjective complaints of left wrist pain (Tr. 11-12; *see* Tr. 204). The ALJ also noted that Dr. Naso examined the plaintiff in September 2006 and found that she had full (5/5) strength in both arms and her ability to grip with both hands was unimpaired (Tr. 13; *see* Tr. 272-74). Additionally, the state agency physicians did not find that the medical evidence showed the plaintiff had any severe hand or arm limitations and noted that the only medical evidence related to such impairments was dated from 2002 and restricted the plaintiff to lifting no more than 10 pounds (Tr. 17; *see* Tr. 295-96; *see also* Tr. 286-87).

The plaintiff further argues the ALJ erred in assessing her credibility. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996).  A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).  Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).  Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4.  Moreover, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

> (1)  the individual's daily activities;
>
> (2)  the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> (3)  factors that precipitate and aggravate the symptoms;
>
> (4)  the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5)  treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6)  any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7)  any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

The ALJ found that while the plaintiff's medically determinable impairments could reasonably be expected to cause some alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment (Tr. 17). The ALJ recognized that the plaintiff experienced continued pain and that her back surgery did not "eliminate all of her symptoms," but found that the level of her pain intensity described and the related limitations of her functioning were "disproportionate to the evidence of record when considered in its entirety" (Tr. 17). The ALJ noted that the plaintiff's own testimony regarding her activities of daily living – including that she shopped, cooked, washed dishes, drove, and took care of her two dogs – was "representative of a fairly active and varied lifestyle and was not indicative of any significant restriction of activities or constriction of interests" (Tr. 17). The ALJ further noted that while the plaintiff alleged disability due to carpal tunnel syndrome, Dr. Allen stated that she did not have carpal tunnel syndrome (Tr. 17; *see* Tr. 301-302). Further, while the plaintiff testified at the hearing that her pain caused her to experience depression, there was no evidence that the plaintiff ever reported complaints of depression to any treating or examining physician, and there was no evidence that she ever sought mental health treatment (Tr. 17). Furthermore, Dr. Allen indicated that he never recommended such treatment and that the plaintiff did not have a mental impairment (Tr. 17; *see* Tr. 293).

Based upon the foregoing, the ALJ fully accounted for the plaintiff's credible arm and hand limitations when he limited her to sedentary work with lifting no more than 10 pounds occasionally and less than 10 pounds frequently (Tr. 15-17). Accordingly, this allegation of error is without merit.

## *Past Relevant Work*

Lastly, the plaintiff argues the ALJ erred in concluding she could perform her past relevant work as an accounts payable clerk, accounts receivable clerk, and office

17

manager. This court disagrees. The plaintiff specifically argues that the ALJ ignored evidence that she was taken out of her last work attempt by her treating physician on June 10, 2005, the alleged onset date, as well as the evidence of accommodations made by her employer to allow her to perform office work from April 2003 through June 10, 2005. The plaintiff testified that her previous employer allowed her to take frequent breaks and allowed her to go to her car to lay down six or seven times a day for 20 to 30 minutes at a time (Tr. 36). As discussed above, the ALJ gave sufficient reasons for finding the plaintiff's testimony was not fully credible.

"[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted).

The ALJ questioned the vocational expert about whether a hypothetical individual with the plaintiff's vocational profile who was limited to sedentary work with the additional limitations of no lifting more than 10 pounds occasionally and less than 10 pounds frequently, no standing and/or walking more than two hours in an eight-hour work day, and could only occasionally stoop, balance, crouch, kneel, and climb stairs and ramps, but not crawl or climb ladders, ropes, or scaffolds could perform any of the plaintiff's past relevant work (Tr. 58-59).

In response to the ALJ's question, the vocational expert testified that the plaintiff could perform her past work as an accounts payable clerk, an accounts receivable clerk, and as an office manager (Tr. 58-59). The classifications in the *Dictionary of Occupational Titles* provide that all three of these jobs are consistent with the restrictions of being limited to sedentary work with additional lifting, standing and walking, and postural limitations (*see* Tr. 57-59). Based on the vocational expert's testimony, the ALJ found that

18

the plaintiff could perform some of her past relevant work (Tr. 18). Accordingly, the ALJ found that the plaintiff was not disabled within the meaning of the Act (Tr. 18).

Based upon the foregoing, this court finds that the ALJ did not err in this regard.

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

                                        s/Kevin F. McDonald
                                        United States Magistrate Judge

December 28, 2011
Greenville, South Carolina